UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                              No. 21-CR-00592-DHU

DOMINIC GOODMONEY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Dominic Goodmoney's *Motion to Dismiss Indictment with Prejudice for Violations of Sixth Amendment Speedy Trial Right and the Speedy Trial Act*. Doc. 22. The Government responded (Doc. 23), and Defendant replied (Doc. 26). Defendant filed a notice of supplemental authority (Doc. 27), as did the Government (Doc. 31). Having carefully considered the briefs, exhibits, and relevant law, and being otherwise fully informed, the Court concludes that Defendant's Motion is **DENIED.**

### BACKGROUND

On August 11, 2019, Defendant was arrested by Albuquerque Police Department (APD) officers and booked into the Metropolitan Detention Center (MDC) for the criminal offenses of driving on a revoked license, possession of drug paraphernalia, possession of marijuana, and felon in possession of a firearm. *See* Def.'s Ex. A, Doc. 22-1 at 2.

On August 27, 2019, Defendant was indicted on the state level for the offenses of felon in possession of a firearm and failure to provide evidence of vehicle registration in case number D-202-CR-2019-02718. *See* Def.'s Ex. C, Doc. 22-3.

On April 23, 2021, Defendant was federally charged by indictment with Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924. *See* Doc. 2. On the same day, a federal arrest warrant for Defendant was issued. *See* Doc. 7.

On October 7, 2021, Defendant was arrested and booked at MDC for new state charges of aggravated assault with a deadly weapon and criminal damage to property. *See* Def's Ex. F., Doc. 22-6. The new arrest violated Defendant's conditions of release in the state felon in possession case (ending in -2718). *See* Gov.'s Ex. 1, Doc. 23-1. The new arrest also violated Defendant's conditions of release in a pending state domestic violence prosecution, case number T-4-DV-2020004002. *See* Gov.'s Ex. 5. Doc. 23-5.

On October 8, 2021, Defendant was remanded into state custody at MDC for violating his conditions of pretrial supervision in the state felon in possession case. *See* Def.'s Ex. E, Doc. 22-5.

On October 12, 2021, in the state domestic violence case, a state judge ordered Defendant released on his own recognizance. *See* Gov.'s Ex. 8, 23-8 at 2; *see also* Def.'s Ex. J, Doc. 22-10.

On October 14, 2021, ATF Special Agent (SA) Amber Pace sent MDC a copy of the federal indictment and arrest warrant, and MDC indicated they would let SA Pace know when the Defendant was ready to be transferred to federal custody. *See* Gov.'s Resp., Doc. 23 at 3; *see also* Gov.'s Ex. 6, Doc. 23-6.

On October 19, 2021, in the state felon in possession case, a state judge ordered Defendant released to the third-party custody of Pretrial Services. *See* Def.'s Ex. I, Doc. 22-9.

On October 28, 2021, in the state domestic violence case, the state court set a $100 cash bond at the request of defense counsel.[1] *See* Gov.'s Ex. 7, Doc. 23-7.

---

[1] According to Defendant, his state counsel requested the $100 cash bond so that Defendant "would receive credit for time he spent in custody on that case, since there was nothing anyone could do about his release given the

On November 5, 2021, in the aggravated assault case, Defendant was ordered released from custody on his own recognizance. *See* Def.'s Ex. G, Doc. 22-7; *see also* Def.'s Ex. J, Doc. 22-10.

On January 3 and 4, 2022, SA Pace emailed MDC and asked whether the federal detainer was active. *See* Gov's Ex. 9, Doc. 23-9 at 2. The MDC staff person responded, "yes ma'am, we do have him held on a federal detainer. As soon as his locals have been released I'll let you know." *Id.*

On January 21, 2022, Defendant was sentenced in his state domestic violence case; he was sentenced to 88 days, the time he already served in custody. *See* Gov.'s Ex. 10. The domestic violence case was closed. *Id.*

On February 18, 2022, the State of New Mexico entered a *Nolle Prosequi* of the state charges in the -2718 state case, dismissing the case without prejudice because "the State provides that it is deferring to Federal prosecution of this matter." Def.'s Ex. M, Doc. 22-13.

On February 24, 2022, Defendant was arrested in the federal case and transferred into federal custody. *See* Doc. 7; *see also* Gov.'s Ex. 12, Doc. 23-12. On February 25, 2022, Defendant had his Initial Appearance in federal court regarding the indictment in this matter. *See* Doc. 9. Defendant was ordered detained pending trial. *See* Doc. 10; *see also* Doc. 18.

On April 13, 2022, Defendant filed an unopposed motion to continue trial, *see* Doc. 20, which the Court granted. *See* Doc. 21. On May 10, 2022, Defendant moved to dismiss on speedy trial grounds. *See* Doc. 22. On June 6, 2022, Defendant filed an unopposed motion to continue trial, *see* Doc. 24, which the Court granted. *See* Doc. 25. On August 31, 2022, Defendant filed an additional unopposed motion to continue trial, *see* Doc. 29, and again, the Court granted a continuance. *See* Doc. 30.

---

federal hold. Mr. Goodmoney would have otherwise been released on his own recognizance in that matter." Doc. 26 at 2 (citing the October 12, 2021 release order).

3

**LEGAL ANALYSIS**

Defendant argues dismissal is warranted because the Government violated the Speedy Trial Act and his Sixth Amendment right to a speedy trial. *See* Doc. 22. The Government argues Defendant has failed to show a violation of either the Speedy Trial Act or his right to a speedy trial under the Sixth Amendment. *See* Doc. 23.

**I.   Speedy Trial Act**

"The Speedy Trial Act is designed to protect a criminal defendant's constitutional right to a speedy trial and serve the public interest in bringing prompt criminal proceedings." *United States v. Toombs*, 574 F.3d 1262, 1268 (10th Cir. 2009) (quoting *United States v. Thompson*, 524 F.3d 1126, 1131 (10th Cir. 2008)). The Speedy Trial Act ("the Act") "requires that a criminal trial commence within seventy days of the filing of the indictment or information or the defendant's appearance, whichever occurs last." *Id.* (citing 18 U.S.C. § 3161(c)(1)). The Act provides that certain periods of time are excludable from the seventy-day period. *See* 18 U.S.C. § 3161(h).

Defendant argues that, under the Act, he was entitled to notice of the federal charges against him at the time the federal detainer was placed on him while detained at MDC. *See* Doc. 22 at 5. Specifically, Defendant argues the Government violated the notice provision of 18 U.S.C. § 3161(j)(1), which states: "If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution he shall promptly – (A) undertake to obtain the prisoner for trial; or (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial." 18 U.S.C. § 3161(j)(1). Defendant asserts that he submitted a public records request to MDC, and MDC responded that it had no record of service of the federal indictment upon Defendant. *See* Doc. 22 at 6. Defendant notes that the Act does not mandate dismissal of

an indictment for a violation of the notice requirement, but argues nonetheless that there must be a remedy to ensure the Government adheres to the notice provision. *Id.* Defendant argues the Government's violation of the Act deprived him of the opportunity to demand a speedy trial. *Id.* at 7.

The Government argues Defendant has not shown a violation of the Speedy Trial Act, but even if he had, the appropriate remedy would be a dismissal without prejudice. *See* Doc. 23 at 7-10. The Government argues Defendant has not shown a violation because the "total amount of non-excluded Speedy Trial Act time is less than 70 days." Doc. 23 at 8. The Government's analysis focuses primarily on when the Speedy Trial Act's clock was triggered, so that it can calculate the total amount of non-excluded time. *Id.* at 8-10.

Strikingly, Defendant acknowledges that a violation of the Speedy Trial Act does not provide for the remedy of dismissal of an indictment. *See* Doc. 22 at 7; *see also United States v. Torres-Centeno*, 211 F.3d 1279 (10th Cir. 2000) ("every circuit that has addressed this issue has held that dismissal is not an available remedy for a violation of § 3161(j)(1)"). Yet Defendant's sole request for relief is for the Court to "dismiss this indictment with prejudice." Doc. 22 at 16. *See also* Doc. 26 at 4. Though Defendant refers to *United States v. Tanner*, 941 F.2d 574 (7th Cir. 1991), for the finding that disciplinary sanctions against the government attorney are the remedy for a violation of § 3161(j)(1), Defendant does not request sanctions. *See* Doc. 22 at 6-7. Instead, Defendant argues that the Government's violation of the Act is "undoubtedly relevant to a constitutional speedy trial analysis," and its alleged violation "deprived Mr. Goodmoney of his opportunity to assert a fundamental constitutional right, and unequivocally caused a violation of that right." *Id.* at 7. Considering Defendant's position and request for relief, the Court need not

reach the question of whether the notice provision of the Act was violated. Instead, the Court proceeds directly to the question of whether dismissal is warranted under the Sixth Amendment.

**II.    Sixth Amendment Right to a Speedy Trial**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI.  The remedy for a Sixth Amendment speedy trial violation is dismissal of the case. *See United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009).  To determine whether a defendant has been deprived of right to a speedy trial under the Sixth Amendment, the Court considers four factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.  *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).  "None of these four factors is, by itself, a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Instead, we consider these factors together with any other relevant circumstances." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (citations and internal quotation marks omitted).

  a. **Length of Delay**

The length of delay factor is the threshold consideration. *See Toombs*, 574 F.3d at 1274. Only if the delay is "presumptively prejudicial" will a court need to consider the remaining factors. *United States v. Hill*, 197 F.3d 436, 443-44 (10th Cir. 1999) (citation omitted).  "Delays approaching one year generally satisfy the requirement of presumptive prejudice." *Batie*, 433 F.3d at 1290; *see also United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010) ("the length of the delay crossed the threshold from 'ordinary' to 'presumptively prejudicial' because it was more than a year").

The speedy trial right attaches when a defendant "is arrested or indicted on federal charges, whichever come[s] first." *United States v. Banks*, 761 F.3d 1163, 1181 (10th Cir. 2014).  The

length of delay is measured starting from that point. *See Batie*, 433 F.3d at 1290.  The delay period ends with trial or the trial court's decision on the motion to dismiss. *See United States v. Nixon*, 919 F.3d 1265, 1269 (10th Cir. 2019); *see also Seltzer*, 595 F.3d at 1176; *see also Batie*, 433 F.3d at 1290.

Here, Defendant was indicted on the federal charge on April 23, 2021. *See* Doc. 2. He was arrested on the federal charge on February 24, 2022. *See* Doc. 7. Because the indictment came first, the length of delay is measured from April 23, 2021, the day of the indictment.[2] To date, approximately one year and six months have elapsed from the day of indictment. Defendant has established presumptive prejudice.

Once a defendant shows presumptive prejudice, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Seltzer*, 595 F.3d at 1176. In this analysis, the Court considers the nature and complexity of the charges. *Id.* If the charges are relatively simple, the delay may weigh more in favor of the defendant. *Id.; see also Banks,* 761 F.3d at 1182.

---

[2] The Government argues that Defendant's speedy trial right did not attach on April 23, 2021, the day the indictment was issued, because the indictment was under seal until February 24, 2022. *See* Doc. 23 at 15-16. For this assertion, the Government relies on *United States v. Hay*, 527 F.2d 990, 993-94 & n.4 (10th Cir. 1975). *See* Doc. 23 at 7, 15. There, the Court stated that it would "not include the time from appellant's indictment to his arrest because appellant was not available for prosecution and because none of the interests protected by the sixth amendment guarantee were endangered during this time" as the indictment was sealed so the defendant was not subject to "restraints on his liberty nor public accusation before his arrest." *Id.* (citation omitted). However, "courts have recognized that there has been an 'evolution in speedy trial jurisprudence' since the Tenth Circuit's 1975 decision in *Hay*." *United States v. Garcia*, 469 F. Supp. 3d 1050, 1057 (D. Colo. 2020), reconsideration denied, No. 17-CR-00358-CMA, 2020 WL 5653514 (D. Colo. Sept. 23, 2020) (citing *United States v. Leaver*, 358 F. Supp. 2d 255, 268 n.106 (S.D.N.Y. 2004)). "Specifically, in *Doggett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Court held that a defendant's Sixth Amendment speedy trial rights are 'triggered by arrest, indictment, or other official accusation,' even if the defendant is unaware of the accusation." *Garcia*, 469 F. Supp. 3d at 1057. This is in part because "[i]t is easy to imagine a situation where, by the time an indictment is unsealed, the defendant suffers prejudice—important documents may be destroyed or key witnesses may die as a result of a delay caused by sealing the indictment." *United States v. Casas*, 356 F.3d 104, 113 (1st Cir. 2004). As such, the Court rejects the Government's argument and finds that Defendant's speedy trial right attached when the sealed indictment was filed on April 23, 2021.

In this case, Defendant is accused in a one-count indictment of being a felon in possession of a firearm and ammunition, which is generally a simple charge. *See Seltzer*, 595 F.3d at 1176. Defendant argues it is also a factually simple case because multiple law enforcement witnesses could testify regarding Defendant's possession of the firearm, and Defendant's status as a felon was immediately known because the state prosecution disclosed Defendant's numerous previous felony convictions in a state motion. *See* Doc. 22 at 9. Because the delay is presumptively prejudicial and the felon-in-possession charge is a simple charge, the length of delay factor weighs in favor of finding a violation of Defendant's speedy trial rights.

### b. Reason for Delay

"The second factor, the reason for the delay, is especially important, and the burden is on the government to provide an acceptable rationale for the delay." *Banks*, 761 F.3d at 1183 (citation omitted). "The reason for a delay weighs against the government in proportion to the degree to which the government caused the delay." *Batie*, 433 F.3d at 1291. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531. "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657–58. Delays attributable to the defendant do not weigh against the government. *See United States v. Abdush-Shakur*, 465 F.3d

458, 465 (10th Cir. 2006). "Continuances and other motions filed by the defendant do not weigh against the government." *Batie*, 433 F.3d at 1291.

Here, the Government asserts several reasons that this factor should weigh in its favor. *See* Doc. 23 at 17-18. First, the Government argues Defendant was a fugitive from justice from April 2021 to October 2021, therefore Defendant was responsible for any delay during this period. *See id.* Defendant argues he was not a fugitive from justice during this time and offers evidence that he was in the community, supervised by state pretrial services, during this period. *See* Doc. 26 at 1; *see also* Def.'s Ex. N, Doc. 26-1.

Contrary to the Government's argument, the record indicates Defendant was supervised by state Pretrial Services in case number D-202-CR-2019-02718 during the period from April to October 2021. *See* Def.'s Ex. N, Doc. 26-1. On July 21, 2021, a state Pretrial Services Notice indicates Defendant was released onto Pretrial Services supervision on January 5, 2021, Defendant reported being employed as of the date of the July Notice, and Defendant obtained a traffic citation on July 14, 2021. *Id.* The evidence also indicates Defendant appeared for a hearing on the traffic citation in Santa Fe Magistrate Court in August 2021. *See* Def.'s Ex. O, Doc. 26-2. All of this indicates that Defendant was not a fugitive from justice as the Government contends. Because the record shows Defendant was not a fugitive from justice, the Court finds the period from April to October 2021 will not be counted against Defendant.

Next, for the period from October 2021 through February 2022, the United States argues that Defendant was "held in state custody on multiple matters" during this time. Doc. 23 at 17. The Government acknowledges that concurrent state prosecutions cannot necessarily justify a delay, but it argues "state authorities needed time to work through the numerous issues" related to the state prosecutions. *Id.* at 18. The Government argues it had "no control" over Defendant

obtaining new state charges, violating his conditions of release, or the conditions of release set in his state cases, which included a $100 cash bond in one case and third-party release to state Pretrial Services in another case. *Id.* at 17-18.

The Government also argues that Defendant benefitted from his time in state custody because he received credit for his time in custody against the sentence in his state domestic violence case and because he was able to resolve the domestic violence case during this period. *See id.* Next, the Government emphasizes that it showed "reasonable diligence in learning about the defendant's custodial status at MDC" by communicating with the MDC about when Defendant could be transferred to federal custody. *Id.* Finally, the Government argues that the U.S. Marshals "were not accepting routine writs of habeas corpus to obtain the presence of state pretrial detainees in federal court" because of the COVID-19 pandemic. *Id.* The Government argues all of these facts in combination amounted to a situation that is different than the sort of negligence or "deliberate gamesmanship" that would weigh against the Government. *Id.*

Defendant argues the Government did not have a "justifiable reason" for failing to prosecute Defendant federally once the indictment was filed, particularly because the state prosecution's position in the felon in possession case was deference to the federal prosecution. Doc. 22 at 11. Defendant argues the Government could have taken custody of Defendant as soon as he was federally indicted because he was living at a known address, was not a fugitive, and was under the supervision of state Pretrial Services. *See* Doc. 26 at 3. Defendant argues the U.S. Marshal's COVID practices did not excuse the Government's failure to advise Defendant of the existence of the federal indictment. *See id.*

"[A]waiting the completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances, but that does not necessarily mean that it is a justifiable excuse

in every case." *Seltzer*, 595 F.3d at 1178.  In these situations, "it is the government's burden to explain why such a wait was necessary in a particular case." *Id.*  That is, "the government must make a particularized showing of why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue.  The mere fact that the defendant was incarcerated on a previous charge for a portion of the delay does not by itself excuse the delay." *Id.*

For the period from October 2021 to February 2022, the Government has not made a particularized showing of why the circumstances in Defendant's case required conclusion of the state proceedings before the federal case could continue.  First, the Court does not have authority before it that indicates this factor should weigh in favor of the Government because Defendant may have benefitted from his time in state custody in the form of sentencing credit and resolving a state prosecution or because the Government communicated with the MDC twice about Defendant's custodial status.  *See* Doc. 23 at 18.

Next, the Government has not shown why the state conditions of release decisions or new state charges excused delaying the federal prosecution.  The Court must "[r]equir[e] the federal government to affirmatively justify the need to defer to another sovereign's proceedings [to] protect[] [] the public's and the defendant's interest in a speedy trial." *Seltzer*, 595 F.3d at 1179.  The Government has not demonstrated here that deference to the state prosecutions was justified.

Regarding the Government's contention that the U.S. Marshals "were not accepting routine writs of habeas corpus to obtain the presence of state pretrial detainees in federal court" because of the COVID-19 pandemic, the Court finds that this reasoning weighs slightly against the Government because the Government cannot explain why the U.S. Marshal's practice prevented it from at least notifying Defendant of the indictment.  "[W]hile a continuation of a jury trial due

11

to the pandemic would not weigh heavily against the government, the government's failure to prosecute [a case] during the pandemic is an intellectually distinct matter and 'still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.'" *United States v. Gomez*, 1:20-CR-01622-MV at *5 (D.N.M. June 10, 2022) (quoting *Doggett*, 505 U.S. at 657–58). This is because even if the Government acted only negligently, "courts have held that the reason-for-delay factor weighs against the government when it cannot explain its failure to arrest or notify the defendant of an indictment." *United States v. Vaughan*, 643 F. App'x 726, 730 (10th Cir. 2016).

However, the Government is not responsible for the delay from April 2022 through present, because during that period Defendant filed three motions to continue and his motion to dismiss. *See Batie*, 433 F.3d at 1291 ("continuances and other motions filed by the defendant do not weigh against the government"); *Banks*, 761 F.3d at 1183 (finding defendants caused delay where they filed "multiple continuances with the district court and argued that they would be prejudiced if the court refused to grant them additional time to prepare"). Given all of the above, the reason-for-delay factor weighs only slightly against the Government in this case.

c. **Assertion of Right**

The third factor is "whether the defendant has actively asserted his right to a speedy trial." *Batie*, 433 F.3d at 1291. A defendant cannot satisfy this factor "merely by moving to dismiss after the delay has already occurred." *Id.* "The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Id.* "While a defendant who fails to demand a speedy trial does not inherently waive that right, [the Tenth Circuit has] emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *United States v. Gould*, 672 F.3d 930, 938 (10th Cir. 2012) (citing

*Barker*, 407 U.S. at 532) (internal quotation marks omitted).  "Thus, if the defendant fails to demand a speedy trial, moves for many continuances, or otherwise indicates that he is not pursuing a swift resolution of his case, this factor weighs heavily against the defendant." *Id*. *See also United States v. Black*, 830 F.3d 1099, 1120 (10th Cir. 2016) ("The third *Barker* factor weighs against a defendant who weakly asserts his speedy-trial right long after he could have, but the factor weighs in favor of a defendant who early, frequently, and forcefully asserts his right.").

The Government observes Defendant filed his motion to dismiss two months after his initial appearance, which it recognizes is a "relatively short turnaround." Doc. 23 at 19. However, the Government notes that Defendant filed a motion to continue the trial from May 2, 2022 to July 5, 2022 before he filed his motion to dismiss. *Id.* The Government also notes that the time needed to resolve this motion will add additional delay. *Id.* In combination, the Government asks the Court to treat this factor as neutral. *Id.* Lastly, the Government notes that Defendant had access to counsel in his state prosecutions but did not take steps to question his detention at MDC from October 2021 to February 2022, despite now claiming he believed he was detained solely on a federal detainer during that period. *Id.*

Defendant asserts it is appropriate to evaluate his actions once he knew of the indictment and therefore notes that he filed the motion to dismiss two months after learning of the federal charges against him. *See* Doc. 22 at 13. He states he requested one trial continuance to "review discovery and conduct an investigation," including regarding "issues related to Mr. Goodmoney's speedy trial claim." *Id.* Defendant argues his actions counsel in favor of finding that this factor weighs against the Government. *Id.*

The Court agrees with the Government that Defendant filed his motion to dismiss only two months after learning of the federal indictment against him, which is a relatively short turnaround.

The Court finds this was an early assertion of his speedy trial rights. Defendant requested one continuance before filing his motion to dismiss, in part to investigate issues related to his speedy trial claim. *See* Doc. 20. However, after filing his motion to dismiss, Defendant filed two additional motions to continue. *See* Docs. 24 and 29. In these motions, Defendant asserted it was not a waiver of his speedy trial claim to request continuances of the trial, noted the Court had not yet ruled on the motion, and stated it would be a violation of his due process rights to proceed to trial before his speedy trial claim is adjudicated. *See* Doc. 24 at 2, Doc. 29 at 2.

Much of the delay in this case occurred during the period before Defendant was notified of the federal prosecution against him. Defendant began asserting his speedy trial rights shortly after becoming aware of the federal indictment. However, since filing his motion to dismiss based on speedy trial grounds, Defendant has requested two trial continuances. The Court acknowledges that these requests were made in part because the Court had not yet ruled on Defendant's motion to dismiss. On balance, the Court finds that this factor weighs neutrally between the parties.

### d. Prejudice

The fourth *Barker* factor is prejudice. *Barker*, 407 U.S. at 532. "The individual claiming the Sixth Amendment violation has the burden of showing prejudice." *Toombs*, 574 F.3d at 1275. "In cases of extreme delay, the defendant may rely on the presumption of prejudice and need not present specific evidence of prejudice ... [but g]enerally, the court requires a delay of six years before allowing the delay itself to constitute prejudice." *United States v. Larson*, 627 F.3d 1198, 1209 (10th Cir. 2010). Prejudice is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. These interests include: (i) prevention of oppressive pretrial incarceration; (ii) minimization of anxiety and concern of the accused; and (iii) minimization of the possibility that the defense will be hindered or impaired.

14

*Seltzer*, 595 F.3d at 1179.  "The most important of these interests is the impairment or hindrance of the defense." *Toombs*, 574 F.3d at 1275. "Because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important factor." *Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004).  The Tenth Circuit "require[s] a showing of actual prejudice; the mere 'possibility of prejudice is not sufficient to support [the] position that . . . the speedy trial rights were violated." *Vaughan*, 643 F. App'x at 732 (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)).

Defendant argues that he has been prejudiced in three ways:  1) the delay added to his pretrial incarceration, 2) he was denied access to counsel for over six months, and 3) he was deprived of the chance to invoke his rights under the Speedy Trial Act at an earlier date.  *See* Doc. 22 at 13-14 (relying on *Seltzer*, 595 F.3d 1170).  Specifically, Defendant argues he would have been released from MDC on November 5, 2021 but for the federal detainer.  *Id.* at 14.  He argues the time he spent incarcerated at MDC will not count toward any federal sentence he receives, and the time he was held on the federal detainer increased his pretrial detention.  *Id.* 14-15.

The Government argues that Defendant has only asserted prejudice in the form of pretrial detention, based on the period from November 5, 2021 to February 2022.  *See* Doc. 23 at 20.  The Government asserts Defendant is mistaken that he was held during this period on a federal detainer only.  *Id.*  The Government argues Defendant was also held on two state cases during most of this time period and on at least one state case for the whole period.  *Id.*  The Government notes Defendant earned credit toward one of his state sentences during this time, and it also argues that even if Defendant was transferred to federal custody in November 2021, he most likely would have been detained anyway since that is indeed what eventually occurred.  *Id.*  The Government admits Defendant was not able to assert his speedy trial rights before his initial appearance, but it

15

argues that overall, Defendant has not demonstrated the sort of "oppressive pretrial incarceration" that would amount to prejudice. *Id.*

Because this case does not present an instance of extreme delay, Defendant is required to present specific evidence of prejudice. Regarding the interest of preventing oppressive pretrial incarceration, Defendant's argument that he was subjected to four additional months in custody at MDC due to the federal detainer is unavailing. This is because the evidence is mixed as to whether it was only the federal detainer holding Defendant in custody during that period, or whether he was also detained at MDC on state charges. To the extent Defendant argues that he was prevented from earning time against any federal sentence during the time he was at MDC after October 2021, his argument is too speculative. *See Gomez*, 1:20-CR-01622-MV at *12 (declining to give much weight to a defendant's argument that he was prevented from receiving a sentence in his federal case concurrent to his state charges because the mere possibility of a concurrent sentence is too speculative to amount to prejudice).

Defendant did not argue or show that his defense has been impaired or hindered, which is the most important showing he must make. *See Toombs*, 574 F.3d at 1275. Although Defendant's access to counsel on the federal charges was delayed, he has not shown how this prejudiced him. *See United States v. Frias*, 893 F.3d 1268,1273 (10th Cir. 2018) (affirming district court's finding that the defendant had not explained the impact of any delay on her defense). Defendant's argument that the delay prevented him from asserting his speedy trial rights is without merit as the Tenth Circuit has found that "a wait to assert such a right is implicit in any delay and therefore fails to establish the requisite prejudice necessary to trigger a constitutional violation, especially when [Defendant] (unlike the defendant in *Seltzer*) has shown no lost opportunities from the delay." *Id.* at 1274. Finally, he does not argue that he suffered prejudice in the form of anxiety,

the second interest the speedy trial right was designed to protect. *See Seltzer*, 595 F.3d at 1179. In conclusion, Defendant has not shown prejudice.

### e. Balancing the Speedy Trial Factors

Though none of the four *Barker* factors is "a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial," *Batie*, 433 F.3d at 1290, "failure to show prejudice is nearly fatal to a speedy trial claim." *Gould*, 672 F.3d at 939; *see also Frias*, 893 F.3d at 1275 ("we are generally reluctant to find a speedy trial violation without prejudice").

Here, the Court has found that the first factor weighs in favor of Defendant, the second factor weighs slightly against the Government, and the third factor weighs neutrally. Combined with the significant finding that Defendant has not shown prejudice, the Court finds no constitutional violation under the Sixth Amendment.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's *Motion to Dismiss Indictment with Prejudice for Violations of Sixth Amendment Speedy Trial Right and the Speedy Trial Act* (Doc. 22).

**IT IS SO ORDERED.**

_____
DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE